UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
===================================

DAVID FAULKNER

                              Plaintiff,                    DECISION AND ORDER
                                                                05-CV-0360

        -v-
JOANNE B. BARNHART,
Commissioner of Social Security
                              Defendant
===================================

## INTRODUCTION

        Plaintiff David Faulkner commenced the instant action pursuant to 42 U.S.C.

§ 405(g) on May 20, 2005 seeking review of a final determination of the defendant, Jo

Anne Barnhart, the Commissioner of Social Security (the "Commissioner") disallowing

plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §

401 et seq. and 42 U.S.C. § 1381 et seq. The petitioner specifically alleges that the

decision of the Administrative Law Judge ("ALJ") was erroneous and not supported by

substantial evidence in the record, or was contrary to law. On November 4, 2005, the

Commissioner moved for judgment on the pleadings. On March 24, 2006, the petitioner

filed a response memorandum for judgment on the pleadings.

        For the reasons stated herein, this Court finds that the plaintiff is not entitled

to benefits because substantial evidence in the record demonstrates that he is not disabled

within the meaning of the Social Security Act. Therefore, the Commissioner's decision is

upheld.

## PROCEDURAL HISTORY

        Plaintiff filed an application for Social Security disability insurance benefits

on January 21, 2003. (Tr. 45)[1]. The application was initially denied (Tr. 14), and plaintiff requested a hearing before an ALJ. The hearing was held before Administrative Law Judge Eugene F. Wisiewski on September 16, 2004 in Buffalo, New York. (Tr. 14-22). On December 8, 2004, the ALJ found that the plaintiff was not disabled. (Tr 14-22). On January 12, 2005, the plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 9-10). On April 22, 2005, the Appeals Council denied the plaintiff's request for review and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7). Plaintiff timely commenced this action.

## DISCUSSION

I.     **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, §405(g) directs that when considering this claim, this Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record,  The Supreme Court has defined the term "substantial evidence" in the context of a Social Security case as "more than a more scintilla" and as evidence which "a reasonable mind might accept to support a conclusion," Richardson v. Perales, 42 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) therefore limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. Monguer v. Heckler, 722

---

[1]     Page citations are to the transcript of the administrative record filed by the Commissioner as part of her answer.

F.2d 1033, 1038 (2d Cir. 1983) (the reviewing court does not try a benefits case de novo).

II.    **The Commissioner's decision to deny Plaintiff's Application for Benefits is supported by the evidence in the record.**

The ALJ found that the plaintiff suffered from asthma, borderline range of intellectual functioning, substance-induced depression and anxiety, and poly-substance abuse which qualified as severe impairments within the meaning of 20 C.F.R. § 416.920(b). The ALJ also found, however, that if the plaintiff's substance abuse is excluded from consideration pursuant to 42 U.S.C. § 1382(c)(a)(3)(J), he would have only "moderate emotionally-based limitations." (Tr. 19). There was no evidence that the plaintiff suffered from any exertional limitations. The ALJ accordingly found that the plaintiff retained the residual capacity to do light work that was not precluded by his borderline range of intellectual functioning, substance-induced depression and anxiety, and polysubstance abuse. The ALJ thus concluded that the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 21). After reviewing the record and the submissions of the parties, this Court finds that substantial evidence supports the ALJ's findings.

The Plaintiff contends that the ALJ erred in determining that Mr. Faulkner's impairments were not medically equal to those listed under subsection C of Listing 12.05(c) of Appendix 1 to 20 C.F.R. Part 404, Subpart P. This section provides:

> Mental retardation is a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports the onset of the impairment before the age of 22.. The required level of severity for this disorder is met when,
>
> A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B.    A valid verbal, performance, or full scale IQ of 59 or less
>
> C.    *A valid, verbal, performance or full-scale IQ of 60 through 70 and a*

> *physical or other mental impairment, imposing an additional and significant work-related limitation of function;* OR
>
> D.    A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>     1.    Marked restriction of the activities of daily, living; or
>     2.    Marked difficulties in maintaining social functioning; or
>     3.    Marked difficulties in maintaining concentration, persistence, or pace; or
>     4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.05 (emphasis added).

The plaintiff claims that he qualifies under this subsection C by virtue of his mental impairment, coupled with his asthma, borderline range of intellectual functioning, substance-induced depression and anxiety, and poly-substance abuse.


### A.    Plaintiff's Mental Condition

The plaintiff's first argument is that he qualifies under Listing 12.05(c) because his IQ is between 60 and 70. To support this contention, he cites the IQ test performed on April 3, 2003 by Dr. Robert Hill (Tr. 126), as well as his Buffalo Public School Records which show a history of special education classes and recorded IQ scores between 69 and 74. (Tr. 88, 155). The ALJ considered these materials, but found that Mr. Faulkner did not qualify under Listing 12.05(c) because the validity of the IQ test scores was suspect and because his academic history (with average vocational education grades) and mental health treatment records showed "moderate" symptoms. (Tr. 19).

IQ tests are not dispositive, but must be used only as a general indication of mental functioning in light of the claimant's daily activities and behavior. Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). For example, where the claimant has a low IQ score but

evidence indicates that he is malingering, a finding of no disability has been upheld.  See Johnson v. Barnhart, 390 F.3d 1067 (8th Cir. 2004), and Clay v. Barnhart, 417 F.3d 922 (8th Cir. 2005)

In the present case, the ALJ rejected the 2003 test scores because Dr. Hill, who administered the test, cautioned that its validity was suspect due to the plaintiff's lethargic and apathetic behavior and opined that the claimant's "potential was somewhat higher than the test results show[ed]." (Tr. 16). Per Dr. Hill's suggestions, the ALJ examined the plaintiff's medical records, noting that they demonstrated average grades for vocational-technical high school special education courses. (Tr. 17). Additionally, Dr. Mohan, a New York state psychologist who examined the plaintiff, also questioned the validity of the 2003  IQ test as an "underestimate." (Tr. 137).  It was on these grounds that the ALJ determined, despite the IQ tests, that the plaintiff's mental condition did not qualify under Listing 12.05, despite a potentially qualifying IQ test result.

The Plaintiff contends that the ALJ erred by not utilizing the IQ test results from the Buffalo Public Schools performed in 1965 (Tr. 153-155), which recorded an IQ score of 69. Indeed, some courts have held that when multiple IQ scores are available from IQ tests administered at different times, the lowest score should be used, See e.g.Ray v. Chater, 934 F.Supp. 348, 350 (N.D.Cal. 1996). Although the ALJ examined the school records showing the IQ score in question  (Tr. 16-17), it appears that he discounted their validity. It was within the ALJ's discretion to question the validity of the school IQ test, since neither the name of the person taking the test nor his observations have been recorded, only a numerical score. Under Clark v. Apfel, 141 F.3d. 1253, 1255 (8th Cir., 1998), and Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986), the ALJ is entitled to examine the

entire record to determine the reliability of the applicant's scores, and the test results must be "examined to assure consistency with daily activities and behavior," Popp, 779 F.2d 1499. In light of Dr. Hill's concerns that the plaintiff may have been malingering during his 2003 IQ test, it was reasonable for the ALJ to discount the validity of these older, poorly-documented tests.

The ALJ also correctly noted that Mr. Faulker's mental condition did not prevent him from working. Dr. Hill documented that Mr. Faulkner had been employed as a security guard for approximately six months ending in November 2002, when he was fired for drinking on the job. Dr. Hill further opined that the plaintiff "should be able to handle some tasks under careful supervision so long as communication in task demands are in keeping with his limited education and limited intellectual ability." (Tr. 16-17, 127). The ALJ determined that the plaintiff did not have marked restrictions in activities of daily living, maintaining social functioning or maintaining concentration. These determinations were supported by Dr. Pierson's opinion that the plaintiff could independently perform cooking, cleaning, laundry, shopping, and money management (Tr. 118-119); by Dr. Hill's opinion that the plaintiff was capable of generally relating adequately with others (Tr. 127); and the assessment of Dr. Mohan, the State psychological consultant. (Tr. 129-54). These findings caused the ALJ to further question the validity of Mr. Faulkner's low IQ scores.

**B.     Plaintiff's Physical or Other Mental Impairments**

In order to qualify under subsection C of Section 12.05, the plaintiff must not only demonstrate a full-scale IQ between 60 and 70, but also an "additional physical or mental impairment which imposes an additional and significant work-related limitation of

function." Thus, even if the ALJ had found either Dr. Hill's or the Buffalo Public Schools IQ test scores to be reliable, the plaintiff must still demonstrate an additional impairment sufficiently severe to render him disabled. The plaintiff claims that his asthma, borderline range of intellectual functioning, substance-induced depression and anxiety constitute an "additional physical or mental impairment."

_____With regard to the plaintiff's substance-induced depression and anxiety, and his poly-substance abuse, the ALJ properly considered whether his alcoholism and substance abuse was a contributing factor to his limitations. Pursuant to 42 U.S.C. §1382c(a)(3)(J),

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

The ALJ concluded that the plaintiff "would [not] have any more than moderate emotionally based limitations" without substance abuse. This finding was based upon his review of the plaintiff's average high school performance (Tr. 87-89), and medical records from Horizon Health Center dated Mar. 31 2003 (Tr. 90-94) diagnosing Plaintiff with a depressive disorder with a Global Assessment Functioning (GAF) of 60.[2] (Tr. 20, see also Tr. 133-144). It should also be noted that in the application filled out by the plaintiff's step-daughter for a disability determination by the New York State Office of Temporary and Disability Assistance, in answer to a question asking what the plaintiff does from the time he wakes up to when he goes to bed, the plaintiff answered, "Drink and roam the streets with other derilics" [sic]. (Tr. 73). The ALJ's determination that the plaintiff's condition was caused by

_____

[2] The DSM-IV defines a GAF of 60 as indicative of moderate depressive symptoms exhibited with flat, circumscribed speech and moderate conflict with co-workers, friends, and family. DSM-IV at 32.

substance abuse was based on substantial evidence.

The plaintiff questions the ALJ's characterization of the claimant's depression and anxiety as substance-induced, claiming that the record shows diagnoses only for depressive disorder (Plaintiff's Memorandum of Law at 12). The plaintiff claims, for instance, that Horizon Health Services diagnosed the plaintiff with depressive disorder, not substance-induced depressive disorder (Tr. 91). A review of Horizon Health Service's records, however, indicates that he was discharged for treatment non-compliance and that he had showed limited progress in dealing with drug and alcohol abuse (Tr.93). The plaintiff likewise claims that he was diagnosed by the Erie County Medical Center for major depression (Plaintiff's memo at 12, Tr. 95) - but in fact, ECMC diagnosed him as also with polysubstance abuse (Tr. 95). Accordingly, this Court finds the plaintiff's argument that the depression/anxiety disorder is not substance-induced to be completely without merit.

The plaintiff also claims that his asthma constitutes an "additional physical impairment" within the meaning of Listing 12.05(c). The ALJ determined, however, that, although the asthma qualified as "severe" within the meaning of 20 C.F.R. 416.920(b), it did not qualify as sufficiently severe under Appendix 1 of 20 C.F.R. Part 404, Subpart P, Section 103.03. In order to be sufficiently severe under this section, the plaintiff must demonstrate either an $FEV_1$ value [3] equal to or less than a specified value, dependant upon the patient's height, or a history of at least once every two months or six times a year of asthma attacks in spite of prescribed medication which require physician. Thus, in <u>Stewart v. Sec'y of Health & Human Svcs.</u>, 957 F.2d 581 (8th Cir. 1992), the Eighth Circuit found

_____

[3] The $FEV_1$ value is the measurement of the volume of air that the patient can expel from his lungs in one second and is a measurement of the quality of lung function.

a disability where the claimant could perform only sedentary activities in a clean-room environment, while in Pickering v. Chafer, 951 F.Supp. 418 (S.D.N.Y 1996), the Court rejected a claim where the plaintiff had only a few visits to the emergency room for asthma, and where examination revealed no wheezes, rails, or rhonchi and where lung functions were restored to within normal limits after administration of bronchodilator. See also Irizarry v. Apfel, 994 F.Supp. 106 (D.P.R. 1998) (rejecting a disability claim where the plaintiff's asthma was controlled by an inhaler).

The ALJ properly rejected the claimant's asthma claim because it does not meet the listing requirements. There is no evidence of chronic asthmatic bronchitis with a qualifying $FEV_1$ value, nor is there any evidence of asthma attacks requiring medical intervention at least six times annually. In fact, the record indicates only one visit to the emergency room for asthma in December 2003, when the plaintiff "ran out of an inhaler" and presented only with shortness of breath. (Tr. 96).

Based upon the foregoing, this Court concludes that the ALJ properly found that the plaintiff was not disabled under subsection C of Section 12.05 since there is no qualifying "other physical or mental condition." Thus, even if the plaintiff's 2003 or high school IQ scores were to be credited, his claim under this subsection still would not succeed.

## **CONCLUSION**

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings and denies the plaintiff's motion for judgment on the pleadings. The Clerk of Court shall take all steps necessary to close the case.


SO ORDERED.

s/ *Richard J. Arcar*a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: February 27, 2007